UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESCONDIDO UNION SCHOOL DISTRICT,<br><br>         Plaintiff,<br><br>v.<br><br>SANGEETHA BUSSY CHANDRASEKAR and UPENDRA GOPIMATH KOTEN, on their own behalf and on behalf of minor student S.K., and S.K., a minor,<br><br>         Defendants.<br><br>AND RELATED COUNTERCLAIM. | Case No.: 18-cv-02873-JLB (NLS)<br><br>**ORDER GRANTING MOTION FOR APPROVAL OF MINOR'S COMPROMISE**<br><br>**[ECF No. 15]** |

  Before the Court is a Motion for Approval of Minor's Compromise filed by Defendants and Counter-Claimants Sangeetha Bussy Chandrasekar and Upendra Gopinath Koten (collectively, "Parents"), on their own behalf and on behalf of S.K., a minor ("Student" and collectively with Parents, "Defendants"). (ECF No. 15.) The Court held a hearing on the motion on August 20, 2019. (ECF No. 17.) Upon due consideration and for the reasons set forth below, the Court **GRANTS** the motion.

///

# I. BACKGROUND

On December 23, 2018, Plaintiff Escondido Union School District ("Plaintiff" or "District") commenced this action against Defendants pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(2)(A), appealing the final decision of the administrative law judge ("ALJ") in an underlying state administrative proceeding. (ECF No. 1.)

## A. Complaint

Plaintiff alleges the following in its Complaint:

The Student and his family immigrated to the United States in 2009. (*Id.* at ¶ 9.) That same year, the Student was found eligible for special education under the IDEA by the Westwood Regional School District ("Westwood") in New Jersey. (*Id.*) The Parents signed the Individualized Education Program ("IEP") developed by Westwood. (*Id.*) In 2014, Defendants moved to Pleasanton, California. (*Id.* at ¶ 10.) Although the Pleasanton Unified School District held an IEP meeting regarding the Student in 2014, the Parents did not consent to the IEP and began homeschooling the Student. (*Id.*) Defendants eventually moved to San Diego, California in 2015 and continued throughout this time to homeschool the Student. (*Id.*)

On August 14, 2017, the Parents enrolled the Student in the District. (*Id.* at ¶ 11.) At that time, the Parents provided the District with a copy of the unsigned Pleasanton IEP but did not mention the Westwood IEP. (*Id.*) The Parents also did not mention that the Student had been receiving education services from Alternative Teaching Strategy Center ("ATSC") in San Diego since March 23, 2016. (*Id.*) The District did not learn until February 2018 about the Student's enrollment and attendance at ATSC. (*Id.*)

At the start of the 2017-2018 school year, the District generated a comprehensive assessment plan and presented it to the Parents for signature on August 17, 2017. (*Id.* at ¶¶ 12-13.) Because the District did not have the Westwood IEP, District witnesses testified that they believed the Parents had revoked their consent to special education and related services in September 2014. (*Id.* at ¶ 14.) During an October 16, 2017 IEP team meeting,

the Student's mother affirmed that she had revoked services in September 2014. (*Id.*) Based on the information provided by the Student's mother, and because it only had the unsigned IEP from Pleasanton, the District offered an interim placement to the Student in a general education classroom with a 1:1 aide and a safety plan. (*Id.* at ¶ 15.)

On August 28, 2017, the Parents sent the District a unilateral placement letter written by their attorney stating that although they had enrolled the Student in the District they were unilaterally placing him, because a general education placement would not be appropriate for the Student and the District could not provide the Student with a free appropriate public education ("FAPE"). (*Id.* at ¶ 16.) The Parents further stated that they remained interested in District services and asked the District to generate an assessment plan. (*Id.*)

The District sent the Parents a letter on September 8, 2017, indicating its willingness to discuss a diagnostic placement in a special education program wherein the Student could be assessed, pending completion of the assessments. (*Id.* at ¶ 17.) The District also reiterated the behavior and safety plan offered through the interim placement. (*Id.*) The Parents did not respond to this correspondence or inquire about its content at subsequent encounters with District personnel. (*Id.*)

In September and October of 2017, the District comprehensively assessed the Student in the following areas: academic, cognitive, speech and language, fine motor, sensory, gross motor, adaptive skills, and augmentative and alternative communication. (*Id.* at ¶ 18.) The District also conducted a special circumstances instructional assistance ("SCIA") assessment and a functional behavioral assessment ("FBA"). (*Id.*) Despite being asked several times by the District, the Parents did not disclose that the Student was receiving behavioral or academic support services from any non-public agency ("NPA"), including ATSC. (*Id.* at ¶ 19.) The Parents also did not disclose that the Student was purportedly able to communicate by typing or that English was not his primary language. (*Id.* at ¶¶ 20-22.)

On October 16, 2017, the IEP team reviewed the results of the assessment and agreed that the Student was eligible under the category of Autism. (*Id.* at ¶ 22.) The Student's mother attended the IEP meeting and had an opportunity to ask questions and provide input. (*Id.*) She did not state that she disagreed with the assessments. (*Id.*) The IEP team's offer of FAPE included placement in a separate class program designed for students with moderate-to-severe disabilities at the Student's school of residence, with the following services: specialized academic instruction for 393 minutes daily in a group setting; occupational therapy consultation in the amount of ten, 30-minute sessions annually in a group setting; APE for 200 minutes weekly in a group setting; psychological services for 20 minutes weekly in an individual setting; and speech and language services in the amount of 50, 20-minute sessions in an individual or group setting. (*Id.* at ¶ 23.) Student was offered extended school year services. (*Id.*) Student was also offered numerous supplementary aids and accommodations including 1:1 aide assistance throughout the day, with 2:1 aide assistance during transitions and activities outside the classroom and as necessary to prevent elopement and a behavior intervention plan. (*Id.*)

In a letter to the District dated November 10, 2017, the Parents stated that they had concluded that the proposed placement could not provide the Student with a FAPE. (*Id.* at ¶ 24.) The Parents further described their intent to unilaterally place the Student in an appropriate school. (*Id.*) The letter further stated the Parents' intent to seek reimbursement from the District for placement in a non-public school ("NPS"). (*Id.*)

The District responded by letter on December 15, 2017 and denied the Parents' request to fund the Student's placement at an NPS, opining that such a placement would be too restrictive for the Student. (*Id.* at ¶ 25.) The District also indicated its intent to file for due process. (*Id.*) The Student's mother responded by e-mail on January 9, 2018 and stated her disagreement with all parts of the IEP, except for the Student's eligibility and APE services. (Id. at ¶ 26.) The e-mail included a signed and dated signature page to the October 16, 2017 IEP, which was signed and dated January 8, 2018, indicating the same partial consent. (*Id.*)

On January 22, 2018, the District received a written request from the Student's mother for Independent Educational Evaluations ("IEE") in academic achievement and speech and language, including assessments of receptive, expressive, and pragmatic language. (*Id.* at ¶ 27.) The District responded by letter on January 31, 2018 explaining that the District planned to file for due process to defend its assessments. (*Id.* at ¶ 28.)

Throughout the assessment and IEP progress, the Student's mother continued to homeschool the Student, with additional services from ATSC, which is an NPA. (*Id.* at ¶ 29.) ATSC is not certified through the California Department of Education to provide specialized academic instruction ("SAI") by a credentialed special education teacher. (*Id.*) In November 2017, the Student's mother enrolled the Student in a different homeschool program linked to ATSC. (*Id.*)

Throughout the assessment and IEP progress, the Parents continually and deliberately misled the District as to the Student's abilities, needs, and current placement. (*Id.* at ¶ 30.) By knowingly withholding this information from the District's evaluators, they hindered the assessment process and caused the assessments to be subject to challenge. (*Id.*) By knowingly withholding this information from the other IEP team members, they undermined the IEP process and the team's ability to offer the Student a FAPE in the least restrictive environment ("LRE"). (*Id.*) The Parents also continually and deliberately misled the District as to their sincere intent to receive a FAPE from the District, when their ulterior motive was to entrap the District into to reimbursing them for wholly inappropriate programs operated directly and indirectly by ATSC. (*Id.* at ¶ 31.)

On February 5, 2018, the District filed a due process complaint with the Office of Administrative Hearings ("OAH") seeking an order that the District had appropriately assessed the Student in speech and academics and was therefore not obligated to fund a speech or academic IEE. (*Id.* at ¶ 32.) The District sought a further order that it could implement the Student's entire October 16, 2017 IEP, despite the lack of full consent from the Parents, because the IEP offered a FAPE in the LRE. (*Id.*) On April 30, 2018, the Student filed a due process complaint alleging the District denied him a FAPE during the

5

18-cv-02873-JLB (NLS)

2017-2018 school year and failed to properly assess him. (*Id.* at ¶ 33.) These two matters were consolidated by OAH on May 4, 2018. (*Id.* at ¶ 34.) On June 5, 2018, the District dismissed its complaint, without prejudice, because the Student was no longer a resident of the District. (*Id.* at ¶ 35) The administrative law judge ("ALJ") held a hearing over six days in August 2018. (*Id.* at ¶ 37.)

During the hearing, the Student, through his mother, claimed that the District's assessments in the areas of academics, speech, language, and communication were inappropriate because, *inter alia*, the District did not assess the Student's needs using typing and he was not assessed in his primary language, Saurashtra. (*Id.* at ¶¶ 38, 42.) The testimony unequivocally established that, even if the Student was able to communicate by typing, the District was not, and could not, reasonably have been on notice of any such ability at the time he was assessed. (*Id.* at ¶ 41.) The testimony also directly contradicted the enrollment paperwork completed by the Student's mother stating that English was the primary language spoken, and the Parents' representations to the District that English was the Student's primary language. (*Id.* at ¶ 42.) There was also no indication during the assessments that the Student did not communicate in or understand English. (*Id.*)

The Student's mother also testified that the Student was performing academically higher at ATSC than what the District's assessment reports indicated, but the Student's mother had never disclosed how the Student was performing at ATSC or provided the name of the NPS so that the District's assessors could observe him in that setting. (*Id.* at ¶ 43.) During the hearing, none of the Student's witnesses could testify that during the fall of 2017, the Student was higher performing academically or physically than what the District's assessors found. (*Id.*)

The ALJ issued her final decision on November 29, 2018. (*Id.* at ¶¶ 45, 48.) The ALJ held that Defendants had prevailed on several of the issues and awarded the remedy of reimbursement of the Student's fees and enrollment at ATSC for the period of August 16, 2017 through June 5, 2018, plus transportation in the amount of $3,018.40. (*Id.* at ¶¶ 47, 48.) The ALJ further ordered reimbursement for independent evaluations in an amount

to be established through evidence, provided to the District by the Parents, within 60 days, not to exceed $1,500.00, and submitted before June 30, 2019. (*Id.* at ¶ 47.) The District remitted full reimbursement to the Parents. (*Id.* at ¶ 49.)

The District thereafter filed the present action appealing the decision of the ALJ. In the appeal, the District claims the following:

> Ultimately, the ALJ erred in first determining that the District had to make a FAPE available to the Student given that he was already placed by his Parents at ATSC. Next, she incorrectly found the District did not offer the Student a FAPE, despite the overwhelming evidence that Parents withheld critical information and misled the District in every instance during the assessment and IEP process, and relied on testimony from witnesses she often determined to not be credible. This error was compounded by the fact that the ALJ awarded reimbursement for a program that was wholly inappropriate because it was not certified to [] provide the services it allegedly provided to S.K., not to mention there was no proof the Student receive any benefit from ATSC.

(*Id.* at ¶ 55.) Therefore, the District in its Complaint requested that the Court, after conducting a *de novo* review, reverse those portions of the decision that were found against the District. (*Id.* at ¶ 56.)

**B.  Counterclaim**

On January 22, 2019, Defendants filed an Answer and Counterclaim against the District. (ECF No. 5.) Defendants brought the Counterclaim pursuant to the IDEA for the payment of reasonable attorneys' fees incurred by the parents of a child with disabilities who are the prevailing party in an administrative due process hearing. (*Id.* at ¶ 1.) Specifically, Defendants rely on 20 U.S.C. §1415(i)(3)(B)(i)(I), which provides as follows: "In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability." (*Id.* at ¶ 7.) Defendants claim that attorneys' fees and expenses rendered in anticipation of a due process hearing fall within this authorization. (*Id.*)

///

///

7

18-cv-02873-JLB (NLS)

The following allegations are taken from Defendants' Counterclaim:

Defendants raised the following issues in their due process complaint filed with the OAH:

1. Whether the Escondido Union School District ("District") denied [S.K.] ("Student") a free, appropriate, public, education ("FAPE") for the 2017-2018 school year, from 8/16/17 through 10/15/17 by failing to have an IEP in effect for [Student] at the beginning of the school year. Cal. Educ. Code § 56344(b) and 34 C.F.R. § 300.342.

2. Whether the District denied Student a FAPE for the 2017-2018 school year by failing to appropriately assess [Student] in all areas of suspected disability. Cal. Educ. Code §§ 56381 and 56320(f).) Specifically, the District failed to appropriately assess [Student] in the areas of Academics and Speech, Language, and Communication.

3. Whether the District denied Student a FAPE for the 2017-2018 school year and ESY by failing to develop accurate present levels of academic achievement and functional performance in the areas of Academics and Adapted Physical Education in [Student's] IEP of 10/16/17. Cal. Educ. Code § 56345(a)(1).

4. Whether the District denied Student a FAPE for the 2017-2018 school year and ESY by failing to make a specific, written offer of FAPE at the IEP team meeting of 10/16/17. Union School Dist. v. Smith, 15 F.3d 1519 (1994).

5. Whether the District denied Student a FAPE for the 2017-2018 school year and ESY by failing to accurately identify his assistive technology needs and offer appropriate assistive technology supports in the IEP of 10/16/17. Cal. Educ. Code §§ 56020.5 and 56341.1(b)(5); M.C. v. Antelope Valley Union High School Dist., 858 F.3d 1189 (9th Cir. 2017).

(*Id.* at ¶ 43.)

As remedies, Defendants sought a finding that the District had denied the Student a FAPE for the 2017-2018 school year; funding for IEEs in the areas of academics and speech and language; reimbursement for educational services from a California Certified NPA for the time period at issue; and related transportation reimbursement. (*Id.* at ¶ 44.)

8

18-cv-02873-JLB (NLS)

The ALJ held that Defendants prevailed fully on all issues, except for Issue 5, which was deemed moot. (*Id.* at ¶ 47.) The ALJ ordered the District to reimburse Defendants in the amount of $22,000.00 for educational services from a California-certified NPA ATSC, as well as $3,018.40 in reimbursement for transportation, and $1,500.00 for IEEs in the areas of academics and speech and language. (*Id.* at ¶ 48.)

As the prevailing party in the OAH case, Defendants claim they are entitled to their attorneys' fees and costs. (*Id.* at ¶ 51.) Defendants incurred $125,530.00 in fees and costs. (*Id.*) On January 2, 2019, Defendants' counsel provided the District's counsel with a detailed invoice requesting payment of reasonable attorneys' fees related to the OAH case. (*Id.* at ¶ 52.) The District did not respond and did not pay Defendants' reasonable attorneys' fees and costs. (*Id.*)

### C. Settlement Conference

On January 23, 2019, the Court set an Early Neutral Evaluation Conference ("ENE") before this Court. (ECF No. 6.) On February 11, 2019, the parties consented to have a United States magistrate judge conduct all proceedings in this case including trial, the entry of final judgment, and all post-trial proceedings. (ECF No. 7.) Accordingly, this case was referred to the Honorable Nita L. Stormes to conduct the ENE. (ECF Nos. 10, 12.) The ENE took place on April 8, 2019. (ECF No. 13.) The parties did not settle at that time, but Judge Stormes made a settlement recommendation and the parties were instructed to contact Judge Stormes' Chambers by 5:00 p.m. on April 15, 2019 to advise whether they would accept the recommendation. (*Id.*) On April 15, 2019, the parties advised the Court that the parties had agreed to the Court's recommendation. (ECF Nos. 14; 15-1 at 2.)

### D. State Court Action

On March 5, 2019, the District filed a complaint for damages, fraud, and negligent misrepresentation against Defendants in the Superior Court of the State of California, County of San Diego, Case No. 37-2019-00012253-CU-FR-NC ("Fraud Complaint"). (ECF Nos. 15 at 4-5; 15-1 at 2.) The District served Defendants via a process server when they appeared at the April 8, 2019 ENE. (ECF Nos. 15 at 4-5.)

**E. Settlement Agreement**

On May 15, 2019, Defendants filed a Motion for Approval of Minor's Compromise. (ECF No. 15.) The parties attached a copy of their Settlement Agreement ("Agreement"). (ECF No. 15-1.) In the Agreement, the District agreed to pay Defendants $50,000 "in full satisfaction of all disputes arising out of the OAH Case No. 2018041322 (Due Process Case), U.S. District Court case 3:18-cv-02873-[JLB-JLS] (Federal and Counter Federal Complaints) and Superior Court of the State of California Court case 37-2019-00012253-CU-FR-NC (Fraud Action)." (*Id.* at 3.) The District agreed to make full payment via check made payable to "The Law Offices of Cara Lucier" within 60 calendar days of the effective date of the Agreement, and upon receipt by the District of a completed W-9 form from Defendants' counsel. (*Id.*) If Defendants' counsel is not timely paid, the Agreement becomes void. (*Id.*)

Pursuant to the Agreement, Defendants agreed "not to pursue a civil or any other type of action to recover the balance of their attorneys' fees and costs relating to the Due Process Case, Federal Complaint, Counter Federal Complaint and Fraud Complaint, and any other fees and costs incurred subsequently thereto, including but not limited to communications to collect said fees and costs, seeking an order of judgment pursuant to Local Rule 17.1, and negotiating this Agreement." (*Id.* at 3-4.) The parties also agreed to a general release of all past, present, and future claims against each other arising out of the Due Process Case, Federal Complaint, Counter Federal Complaint, and Fraud Complaint, and to a waiver of California Civil Code Section 1542. (*Id.* at 4-5.)

The effective date of the Agreement is the date that the Agreement, as signed by all parties, is approved by the District's Board of Education and is approved by the Court per Local Civil Rule 17.1, whichever occurs later. (*Id.* at 8.) The Board was to consider the Agreement at its May 9, 2019 regular Board meeting, in closed session. (*Id.*)[1] The parties

---

[1] According to the motion, the Board approved the Agreement on May 9, 2019. (ECF No. 15 at 5.)

are responsible for their own legal fees and costs, except as otherwise provided for in the Agreement. (ECF No. 15-1 at 7.)

The parties represent in the Agreement that the District has met all its obligations under the ALJ's decision and order with respect to reimbursement to the Parents for ATSC tuition and related transportation costs. (*Id.* at 2.)[2] Pursuant to the Agreement, the District may submit a copy of the Agreement to the California Department of Education in support of why it is not obligated to fund these IEEs. (ECF No. 15-1 at 4.)

In the Agreement, the District agreed to dismiss without prejudice the Fraud Complaint within one business day of receipt of the Parents' initials and signatures, as well as their attorneys' signatures, to this Agreement. (*Id.* at 4.) In consideration of this, the Parents agreed not to withdraw their consent to the Agreement before the Board. (*Id.*) The parties further agreed that the Student was to file the present motion within seven days after the Board approved or ratified the Agreement. (*Id.*)

## II.    LEGAL STANDARD

This District's Local Civil Rule 17.1 addresses settlements for minors and provides in pertinent part:

> **Order of Judgment Required.** No action by or on behalf of a minor or incompetent, or in which a minor or incompetent has an interest, will be settled, compromised, voluntarily discontinued, dismissed or terminated without court order or judgment. All settlements and compromises must be reviewed by a magistrate judge before any order of approval will issue. The parties may, with district judge approval[,] consent to magistrate judge jurisdiction under 28 U.S.C. § 636(c) for entry of an order approving the entire settlement or compromise.

CivLR 17.1(a).

---

[2] As of the date of the Agreement, the Parents had not submitted the paperwork necessary to entitle the Student to reimbursement for IEEs in the areas of academics and speech and language. (*Id.*) The parties updated the Court at the hearing on the present motion and clarified that the District has not approved reimbursement for IEEs in these areas and Defendants are no longer seeking that reimbursement. (*See* ECF No. 17.)

"District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011). Rule 17(c) provides that a district court "must appoint a guardian *ad litem*—or issue another appropriate order—to protect a minor or incompetent person who is unrepresented in an action." Fed. R. Civ. P. 17(c). "In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.'" *Robidoux*, 638 F.3d at 1181 (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)); *see also Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983) ("[A] court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian *ad litem*." (internal citation omitted)).

The Ninth Circuit in *Robidoux* established that district courts reviewing the settlement of a minor's federal claim should "limit the scope of their review to the question whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." 638 F.3d at 1181-82. They should also "evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel—whose interests the district court has no special duty to safeguard." *Id.* at 1182 (citing *Dacanay*, 573 F.2d at 1078). "So long as the net recovery to each minor plaintiff is fair and reasonable in light of their claims and average recovery in similar cases, the district court should approve the settlement as proposed by the parties." *Id.*

### III. DISCUSSION

As an initial matter, the Court notes that the settlement at issue is not a typical one as the Student is not directly receiving a net recovery from the settlement. Nevertheless, after reviewing the motion and Agreement, the Court finds that the agreed upon $50,000

settlement is fair and reasonable considering the facts of this case and serves in the best interest of the Student. Defendants incurred $125,530.000 in attorneys' fees and costs in litigating the OAH case. (*See* ECF Nos. 5 at ¶ 51; 15 at 4.) Defendants claim the fees and costs incurred were "reasonable and necessary to prepare and present multiple claims during the 6-day trial and prevail at the administrative hearing level." (ECF No. 15 at 4.)

The judgment in the underlying OAH case provided for Defendants to be reimbursed in the amount of $22,000 for educational services from ATSC, as well as in the amount of $3,018.40 for transportation, and $1,500 for IEEs in the areas of academics and speech and language. (*Id.*) Defendants state that they have received the reimbursement funds from the District. (*Id.* at 5.) As the Agreement resolves the District's appeal of the OAH judgment, Defendants will keep any funds they have already been reimbursed. Defendants' Counterclaim sought only recovery of attorneys' fees and costs, and not damages or injunctive relief. Therefore, the $50,000 settlement is to go directly to Defendants' attorneys to pay the attorneys' fees incurred in litigating the OAH matter.

As such, the Student will not directly receive any of the money. The entire amount of the settlement will be applied towards the attorneys' fees his family incurred in pursuing his rights. (ECF Nos. 15 at 6; 15-1 at 3.) The District has agreed to issue a check made payable to "The Law Offices of Cara Lucier." (ECF No. 15-1 at 3.) The Lucier Law Group (formerly The Law Offices of Cara Lucier) has represented Defendants for the entirety of the litigation. (ECF No. 15 at 6.) The funds will be paid to a Client Trust Account maintained by the Lucier Law Group and then distributed to the Lucier Law Group. (*Id.*) In addition to the $50,000 settlement and $5,500 previously paid by Defendants in fees, Defendants will thereafter pay a "small portion of the remaining balance" owed to their attorneys. (*Id.*) Counsel has agreed to "courtesy" discount the remaining balance of the legal fees. (*Id.*) This method of disbursement of the $50,000 appears fair and reasonable and is within the bounds of applicable law and this District's Local Civil Rules. *See* CivLR 17.1(b)(1) (citing Cal. Prob. Code § 3600, *et seq.*).

13

18-cv-02873-JLB (NLS)

The Court has considered whether Defendants would have ultimately recovered the full amount of fees and costs incurred in the OAH case, as well as any reasonable attorneys' fees and costs incurred as the prevailing parties in this case. If this case had continued, there is no certainty that Defendants would have been the prevailing parties. If Defendants had not prevailed, they would not have recovered any of their attorneys' fees; their award in the underlying case was also in jeopardy. Moreover, this Agreement settles a related action in state court the defense of which would have required Defendants to expend additional funds. The outcome of that action was also uncertain. In addition, as Defendants' attorneys have agreed to discount their attorneys' fees and costs, Defendants are no longer obligated to pay the full amount that they had sought in this matter.

Lastly, the Court is required to consider the outcome of similar cases to determine whether the settlement on behalf of the Student is reasonable. Defendants' motion does not identify any cases involving similar facts to those here. However, the Court has conducted its own review of the applicable case law and finds cases involving an award of attorney's fees out of settlement proceeds to be instructive. For example, in *A.S. v. Harrison Twp. Bd. of Educ. & E. Greenwich Sch. Dist.*, No. CV 14-147 (NLH/KMW), 2017 WL 1362025 (D.N.J. Apr. 12, 2017), the district court reviewed an unopposed motion for approval of the parties' settlement in an IDEA case. In doing so, the court stated that it "must carefully consider" whether the minor's attorney's fees are fair and reasonable "[s]ince . . . the settlement at issue is structured in such a way that every dollar [the minor's attorney] recovers in fees is one less dollar that will be deposited into a trust account for [the minor]." *Id.* at *2; *see also J.N. v. Penn-Delco Sch. Dist.*, No. CV 14-1618, 2017 WL 395481, at *4 (E.D. Pa. Jan. 30, 2017) (quoting *Sosenke v. Norwood*, No. 91-2623, 1993 WL 512824, at *5 (E.D. Pa. Dec. 6, 1993)) ("Especially where the attorneys' fees affect the amount ultimately awarded to the minor, '[i]t is incumbent upon counsel to persuade the court that the attorneys' fees and costs requested are reasonable and equitable.'"). Here, as discussed above, the attorneys' fees being awarded are not reducing the amount that the

Student would otherwise receive. Accordingly, the Court finds the settlement to be fair and reasonable and in the best interest of the Student.

IV. **CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Approval of Minor's Compromise. The parties shall implement the settlement in accordance with the terms of the Agreement (ECF No. 15-1), including the filing of a Joint Motion for Dismissal of this action within five (5) court days after the date of this Order (*id.* at 4). *See* CivLR 7.2.

**IT IS SO ORDERED.**

Dated: August 21, 2019

_____
Hon. Jill L. Burkhardt
United States Magistrate Judge